**PENNSYLVANIA LUMBERMENS MU-
TUAL FIRE INSURANCE CO.
et al., Appellants,**

v.

**J. K. NICHOLAS, d/b/a J. K. Nicholas
& Company, Appellee.**

No. 16814.

United States Court of Appeals
Fifth Circuit.

April 1, 1958.

George J. Baya, Miami, Fla., for appellants.

Louis M. Jepeway, John G. Dauber, W. G. Ward, Ward & Ward, and Jepeway & Dauber, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal in four cases consolidated on a single record from a judgment by the trial court without a jury for the insured against the insurance companies for a fire loss to appellee's wholesale stock of goods and merchandise. The principal question on appeal is what evidence must the trial court consider in determining the salvage value of the merchandise after the fire.

The fire occurred on November 10, 1948. Merchandise consisting of cigarettes, tobacco, candy and numerous other items which were immediately thought by appellee to be salvageable was removed within ten days or two weeks to a new location for protection. Later at the insistence of the appellants, other items were also removed for protection. The trial court could find from the evidence that the companies suggested to Nicholas that he turn the salvage over to a nationally experienced salvage company to dispose of on consignment for him; that he declined to do so; that on January 7th he made his proof of loss with inventory attached; (this was disputed by appellants, who said they did not receive an inventory until they later examined Nicholas under oath); the proof of loss assigned a value of $4,900 to the salvage; the insurance companies made some examination of the merchandise but did not inventory it and they did not agree to take it at the $4,900 valuation; there followed an examination of Nicholas under oath as provided for in the policies; the last examination was on August 2, 1949; thereafter, Nicholas, by arrangements with his suppliers, obtained credits of $12,179 on new merchandise as against part of the salvage; the negotiations resulting in these credits commenced the day after the fire but they were not mentioned in the claim; subsequent to August 2nd other goods out of the salvage were sold by Nicholas and still others were transferred into new stock.

The appellants sought to prove that before the filing of the proof of loss assigning a value of $4,900 to the salvage, Nicholas had obtained agreements with suppliers that if the insurance companies did not take over the salvage as they had a right to do under the policies they would allow him $12,179 for part of the goods. They also sought to prove the amount of sales made out of the salvage and the amount of goods transferred into new stock. The trial court excluded this evidence and on several occasions prevented appellants from completing their proffer of proof.

The trial court announced early in the trial that the only issue was the value on the day of the fire of the salvage, and that the giving of credits by suppliers who were not obligated to do so some nine months after the fire, and the actual sales of the salvage made then were not to be considered in the determination of the value. This ruling the court adhered to even though appellants proffered evidence to prove that the agreement to allow the $12,179 credit was obtained by Nicholas the day after the fire, subject only to the failure of the insurance companies to take the salvage themselves. The court refused to permit the appellants' witnesses to prove the exact terms of such agreements to repurchase or credit Nicholas's account and refused to permit a proffer of proof.

The parties are in basic disagreement as to the applicable law respecting the credit to be allowed to the insurance companies for the merchandise not destroyed. The appellee contended that he is entitled to have the salvage valued by the usual standards. He says it is merely a question of the fair value in money of the salvage immediately after the fire, and he says what the salvage is actually sold for later is not even admissible in evidence touching on the question of value. Appellants claim, however, that any payments received by the insured from other sources on account of the goods destroyed or for sale of the salvage becomes the true measure of the credit it may claim in determining its liability for indemnity.

Ordinarily if an insured is entitled to and does recover for his loss from a third party, the insurer is en-

titled to the benefit of such recovery. This is so because the contract of insurance is strictly one of indemnity against contingent loss.

"It may also be stated that from the very nature of the contract of insurance as a contract of indemnity, the insurer, when he has paid to the assured the amount of the indemnity agreed upon between them, is entitled, by way of salvage, to the benefit of anything that may be received, either from the remnants of the goods or from damages paid by other persons for the same loss." Joyce on Insurance, 2d Ed., Vol. V, p. 5880, Sec. 3537.

That this same principle applies whether the insured has a legal claim against the third party or not is indicated by the language, if not by the precise facts, in Chicago, St. Louis & New Orleans R. Co. v. Pullman Southern Car Co., 139 U.S. 79, 88, 11 S.Ct. 490, 493, 35 L.Ed. 97, where it is said:

" * * * The principle is thus stated by Lord Blackburn in Burnand v. Rodocanachi, L.R. 7 App. Cas. 333, 339: 'The general rule of law (and it is obvious justice) is that, where there is a contract of indemnity, (it matters not whether it is a marine policy, or a policy against fire on land, or any other contract of indemnity,) and a loss happens, anything which reduces or diminishes that loss reduces or diminishes the amount which the indemnifier is bound to pay; and, if the indemnifier has already paid it, then, if anything which diminishes the loss comes into the hands of the person to whom he had paid it, it becomes an equity that the person who has already paid the full indemnity is entitled to be recouped, by having that amount back.' * * *."

Neither party cites any Florida cases which demonstrate how this general rule should be applied to the facts of the case. We think this principle is one which applies without reference to sal-

vage. It is not a rule as to the way to measure the value of salvage. If there is an admitted loss not involving salvage, and if there is a right of subrogation against a third party or if there is a voluntary reimbursement of the insured because of facts surrounding the fire, the claim of the insured is reduced accordingly or the insurer is entitled to the benefit of the subrogation or other benefits received by the insured. Here we have a somewhat different question. It is: What is the true value of the loss? This must be determined by deducting from the value of the property involved in the fire the value of what is left undamaged or partially damaged.

We do not hold that the dollar amount received for salvage is the measure of the value of the salvage. Obviously the value of a stock of merchandise the day after a fire depends upon what those valuing it consider it can be expected to bring in the market, and if it brings more when it actually moves this does not mean that the earlier estimate must be set aside. We do hold, however, that where an insured is in possession of a stock of goods immediately after a fire, *as to which* someone has assured him that if the insurance company does not take them at $4,900 this third party will take them at $12,179, evidence of the outstanding assurance is not only relevant and material to an inquiry as to the value of the stock at that time, but no true value could be arrived at by the court without it. Since the trial court here clearly held that it could not consider such evidence, and especially since it denied appellants the opportunity fully to develop the evidence, the judgment must be reversed for a new trial. Of course, in giving weight to the agreement of the suppliers to credit Nicholas with the $12,179, the court must also consider the items of expense incurred by Nicholas to store, prepare and ship the goods back or sell them to others.

Appellants also complain of the refusal of the trial court to permit them to prove or even make their proffer of proof as to certain of their other de-

fenses. Of course any evidence they wish to tender that would tend to establish these defenses should be received by the court, and as to any which the court considers irrelevant, immaterial or otherwise improper, the parties must be given ample opportunity to put in the record a fair statement of what they intend to prove in order that the appellate courts can intelligently pass upon the challenged ruling of the trial court.

The judgment is reversed for further proceedings not inconsistent with this opinion.